## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 23-cr-10216-DJC** |
| ) | |
| **JERMALL ANDERSON,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                        **July 22, 2024**

### Introduction

Upon the motion of Defendant Jermall Anderson ("Anderson") to appeal the August 11, 2023 Order of Detention Pending Trial ("Detention Order"), D. 70, the Court has made an independent, *de novo* review, see United States v. Tortora, 922 F.2d 880, 883 n.4 (1st Cir. 1990) (citing cases); United States v. Pierce, 107 F. Supp. 2d 126, 128 (D. Mass. 2000) (citation omitted), of the record and counsel's arguments. For the reasons stated below, the Court DENIES the appeal of the Detention Order, D. 70, and the Detention Order, D. 20, shall remain in place.

### Standard of Review

In entering the Detention Order, the Court (Dein, M.J.) concluded that no condition or combination of conditions would reasonably assure the safety of the community, detailing the nature and circumstances of the instant offenses. Id. at 3. For such finding to warrant pretrial detention, there must be a showing, upon clear and convincing evidence, that no condition or combination of conditions will reasonably assure the safety of any other person and the community. 18 U.S.C. § 3142(e)–(f); United States v. DiGiacomo, 746 F. Supp. 1176, 1181 (D. Mass. 1980) (citation omitted). Given the nature of the sex trafficking by force, fraud and coercion

charges against Anderson, a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community applies. 18 U.S.C. § 3142(e)(3)(D). Putting that presumption aside (which the magistrate judge found rebutted by Anderson, D. 20 at 2, and to which this Court agrees) in determining whether there are conditions of release that will reasonably assure the safety of any other person and the community as required, the Court must consider the factors under 18 U.S.C. § 3142(g) including the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger that the defendant's release would pose. The Court addresses these factors in the discussion below.

## Factual Allegations Leading to the Present Charges

Anderson is charged with seven counts of sex trafficking by force, fraud or coercion in violation of 18 U.S.C. § 1591(a)(1) and (b)(1) involving seven different victims (Counts I-VII); one count of knowingly transporting any individual in interstate commerce with the intent for such individual to engage in prostitution in violation of 18 U.S.C. § 2421 (Count IX); and one count of coercion and enticement in violation of 18 U.S.C. § 2422(a) (Count X). D. 73 at 1-8, 10-11.[1] These charges arose of a federal law enforcement investigation of sex trafficking initially by others (including Barry Davis, now convicted of similar drug trafficking charges) but which lead to investigation of Anderson. D. 78-2 at 3. This investigation revealed that Anderson and Davis "exchanged and shared victims for prostitution and/or transported each other's victims for the purpose of prostitution." Id. Although this investigation began in 2018, it was not charged against

---

[1] The Court notes that at the time of the entry of the Detention Order, on August 11, 2023, the grand jury had not yet returned the now operative, superseding indictment, filed on June 11, 2024. D. 73. This new indictment added two additional counts of sex trafficking by force, fraud or coercion and one count of knowingly transporting any individual in interstate commerce with the intent for such individual to engage in prostitution against Anderson. Id.

Anderson until August 8, 2023, D. 1.   The case agent attested, however, that "it has been difficult to find a sufficient number of victims willing to speak with investigators about their experiences with Anderson and [co-defendant] Latasha Anderson." Id.  In fact, the superseding indictment, returned last month, adds additional charges including two additional, sex trafficking charges (and one transporting charge) involving two other victims, Victims 6 and 7, that were not the subject of the original indictment.  D. 73 at 7-8.

The charges against Anderson reflect sustained periods of force, fraud and coercion against vulnerable victims to get them to engage in prostitution for his financial benefit.  D. 78-2 at 3-24; D. 71.  Although each of the seven counts of sex trafficking correspond to different victims and different (and sometimes, overlapping) time periods, the Court details the allegations as to one of these counts as illustrative of his alleged criminal conduct.  Like most of his victims, Victim 1 was drug addict who was recruited by one of Anderson's "bottoms" (as defined at D. 78-2 at 3 n.2) while at a rehab center which was a locus of recruiting for Anderson.  Id. at 3-4.  In their first meeting, Anderson provided Victim 1 with heroin and later sent her to detox facilities to recruit others for his prostitution ring.  Id. at 4.  Anderson posted Victim 1's ad on Backpage and she worked for him in various states, including Massachusetts, New Hampshire, Rhode Island, Connecticut, New Jersey, New York and Pennsylvania.  Id. at 5.  Anderson provided her the funds to rent hotel rooms for these engagements, set the prices for her prostitution services and required her to check in before and after each "date."  Id. at 6.  Although initially Anderson charged her a daily fee for expenses, he began taking all of her money.  Id.; see id. (recounting by Victim 2 that she did not keep any of the money that she earned and that "[i]f she needed food or something personal, she had to ask Anderson's permission").  He also used drugs to control her.  Anderson would provide additional drugs to Victim 1, a drug addict, if she made more money.  Id.  If she

did not make enough money (or if she failed to answer her phone or otherwise did not comply with his directives), Anderson would withhold drugs and Victim 1 would go through withdrawal symptoms. Id. at 6-7. He did the same with other victims in his employ. Id. at 7. Anderson used physical force (throwing things at her and slapping her) with Victim 1 if she did not abide by his rules and he did so with other victims as well. Id. at 7. As to another victim, Victim 3, "Anderson would throw her around and hold her up against the wall and threaten her." Id. at 14. Victim 5 explained that Anderson would enforce the rules and, on one occasion when she had been standing up for herself with a co-defendant, Jennifer Fortier, Anderson arrived, "grabbed her throat, pushed her up against the wall and told her that she better 'not let this happen again' and that she 'better make his money.'" Id. at 21. Victim 5 witnessed him take similar, violent, assaultive actions against other prostitutes. Id. Even when he did not use violence, he "threaten[ed] violence, the withholding of drugs, and threaten to leave women behind, like he left Victim 2 at one point." Id. at 12. Moreover, Anderson make the victims aware that he had a firearm and he would threaten them with the fact that he had one. Id. at 22 (recounting by Victim 5); see id. at 7 (reporting by Victim 1 that she saw Anderson carrying a firearm on several occasions). As alleged, all of these actions by Anderson (and his co-defendants) lead to "a climate of fear" in which multiple victims felt compelled to continue to work as prostitutes for him. Id. at 12.

## **Procedural History**

Anderson initially was indicted on August 8, 2023 and charged in six of the seven counts (five counts of sex trafficking by force, fraud or coercion and one count of coercion or enticement). D. 1. After a detention hearing on August 10, 2023, D. 15, 71, the Court (Dein, M.J.) issued a Detention Order ruling that Anderson be detained pending trial, determining that "he presents a danger to the community that cannot be reasonably mitigated with conditions," and concluding

that "no condition or combination of conditions will reasonably assure the safety of the community," D. 20 at 2-3. Anderson has now appealed that Detention Order to this Court. D. 70. After briefing by both sides, D. 70; D. 78, a review of the transcript, D. 71, exhibits, and oral argument from counsel, D. 93, the Court took the matter under advisement. Id.

## Discussion

*Nature and Circumstances of the Charge.* In considering the factors under 18 U.S.C. § 3142(g), the Court notes the following. As to the nature and circumstances of the criminal offenses Anderson allegedly committed as recounted above, between approximately January 2012 and October 2016, Anderson used threats of violence, violence, coercion by withholding of drugs, money and other essentials to create "a climate of fear" in which at least seven, vulnerable victims worked as prostitutes in several states for Anderson's financial gain. The charges themselves are very serious and the sex trafficking counts alone carry a fifteen-year minimum, mandatory sentence, 18 U.S.C. § 1591(b)(1). Moreover, if proven, Anderson's reliance upon the vulnerability of his victims (as to their drug addiction, homelessness and/or lack of the means to support themselves) to perpetuate his enterprise makes his conduct even more egregious. Anderson has made much of the fact that the charges arise out of alleged conduct running only through October 2016 and, therefore, do not shed light on his present risk to the community. There is, however, more recent evidence, suggesting Anderson's connection to the tools of his enterprise. Through bank records subpoenaed by investigators, Anderson continued to make payments to Eros (where he advertised numerous of his prostitutes, D. 78-2 at 13) throughout 2020 from his Greendot account. Id. at 23. Moreover, the span of approximately four years in which Anderson allegedly engaged in a pattern and practice of coercing and intimidating victims into criminal conduct

(sometimes with the use of others to do so) suggests a risk of harm to the community at large that is not negated by a more recent recounting of good deeds by family[2] and friends.

*Weight of Evidence.*  On the facts as alleged by the government, there is probable cause for the charges here, and there is substantial evidence supporting these serious charges.  This evidence is not limited to the evidence by percipient witnesses (namely, Victims 1 to 7), but corroborated in significant respects with Backpage and Eros ads, hotel records, Uber records, bank records, email subscriber records and the like.  See, e.g. D. 78-2 at 13, 22-23.

*Criminal History.*  The Court has considered that Anderson is likely in Criminal History Category I and the last entry on his BOP was in 2019 for an operating after a suspended license that was dismissed.  D. 70 at 2.  Although this shows a lack of a serious, criminal history, the Court has weighed that against the serious, criminal conduct alleged against him now and the weight of that evidence.

*Personal History and Characteristics.*  The Court has also considered Anderson's personal history and characteristics, much of which is undisputed by the government.  Anderson, now age 43, is a U.S. citizen who is a life-long resident of Massachusetts with significant roots here and it is clear from the letters of support that he has strong family support and community ties.  D. 70-1 *et seq*.  He has four children; his two, teenage sons and his wife's daughter from a prior relationship live with him and his wife in Tewksbury.  Until his detention, he was employed and has coached football and volunteered through a church program.  Although the Court has no reason to doubt the substance of the letters of support that recount Anderson's role as a committed parent, son,

---

[2] That is, even putting aside that Anderson's wife, Megan Anderson, who provided a letter of support and figures significantly into Anderson's argument for release and his proposed release plan, D. 70 at 2, 7, 10, 15, is, according to the government, an unindicted co-conspirator.  D. 78 at 10 (summarizing the alleged ways in which she assisted Anderson in distributing drugs to victims and collecting their proceeds for Anderson).

6

extended family member, friend and community member, the Court notes that some of these good deeds to some members of community, see D. 70 at 10-15 (and attached letters); D. 70-1 (wife recounting friendship and relationship that began in 2013); D. 70-2 (reflecting friendship for 28 years); D. 70-3 (cousin recounting support over the years) presumably overlap with the time period in which the government alleges that he was engaged in a concerted scheme (with the assistance of others at his direction) to exploit others in the community in his sex trafficking operation. As these dual roles were likely possible in the past, they are also possible during any period of pre-trial release even with the conditions of release that Anderson proposes (which include but not limited to home incarceration, prohibition of his use of the internet, monitoring of his electronic devices, continuing and maintaining employment; and residing with his wife and children, D. 70 at 7). Finally, given the nature of his alleged commission of the crimes here, this Court shares Judge Dein's concern about his work at a DYS facility for adolescents and as a substitute teacher, D. 20 at 3, where he has ready access to another population of potentially vulnerable people. D. 78 at 12.

*Nature and Seriousness of Danger to the Community Posed by Release.* Based upon a *de novo* review of these factors under Section 3142(g), this Court concludes, by clear and convincing evidence, that there is no condition or combination of conditions that would reasonably assure the safety of others and the community and that such release would pose a serious risk of harm to same.

The sex trafficking charges create a rebuttable presumption that no combination of release conditions will reasonably assure public safety. 18 U.S.C. § 3142(e)(3)(D). To rebut this presumption, however, Anderson must only "produce some evidence." United States v. Jessup, 757 F.2d 378, 384 (1st Cir. 1985), abrogated on other grounds by United States v. O'Brien, 895

F.2d 810 (1st Cir. 1990).   Based upon the evidence provided, Anderson has rebutted that presumption.   However, even without the benefit of this presumption, the Court concludes the government has carried its burden of showing that no condition or combination of conditions will reasonably assure the safety of any other person and the community.

## Conclusion

Having conducted an independent review of the record, this Court concludes that Anderson's release presents a serious risk of danger to the community that cannot be mitigated with conditions of release.   For all these reasons and after *de novo* review, the Court finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of others and the community.   Accordingly, the Court DENIES the appeal of the Detention Order, D. 70, and the Detention Order, D. 20, shall remain in place pending trial.

**So Ordered.**

/s Denise J. Casper
United States District Judge